ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

APR - 8 2014

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

-JEC-

Fareeda L. Khader,

Plaintiff

v.

SUNTRUST MORTGAGE INC.

Defendant

CIVIL ACTION

FILE NO:

## 1:14-CV-0987

---

# VERIFIED COMPLAINT FOR INJUNCTION AND DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT AND REAL ESTATE AND SETTLEMENT PROCEDURES ACT AND TO CANCEL OR POSTPONE THE SALE OF PROPERTY

---

COMES NOW Plaintiff, Fareeda L. Khader, a GWINNETT COUNTY resident, owning property within the county, proceeding in propria persona in Sui Juris, to file this *Verified Complaint* asking this honorable Court for an **EMERGENCY MOTION** *for injunction to Cancel or Postpone the upcoming Foreclosure Sale and Complaint for Damages incurred under the Fair Debt*

*Collection Practices act and Real Estate and Settlement Procedures Act* against the Defendant, SUNTRUST MORTGAGE INC..

## PREFACE

1.    Plaintiff ask leave of the Court for an Emergency Petition or Emergency Motion submitted to the "presiding motion judge" to be to be coordinated with the court's filing clerk for injunction to **Cancel or Postpone the upcoming Foreclosure Sale scheduled for May 6, 2014.**

## PARTIES TO THE ACTION

2.    Plaintiff, **Fareeda L. Khader,** who is the legal title owner, at all times relevant, has owned and resided at 2153 Pond Road, Duluth, GA 30096, in GWINNETT COUNTY.

3.    Defendant SUNTRUST MORTGAGE, INC., ("STM"), is a for-profit foreign corporation, with its principal place of businesses' located at **1001 Semmes Avenue, Richmond, Virginia 23224 - 866-384-0903.** STM will be served through their Registered Agent on file at the Georgia Secretary of State's Office: Registered Agent: **Corporation Service Company,** located at **40 Technology Parkway, South, Norcross, GA 30092, Gwinnett County, Georgia.** A copy of

this complaint will be mailed to the above addressee via Priority Mail with delivery confirmation.

4.     Defendant STM is the current servicer of the promissory note, and wishing to lay claim on the property as a real party of interest. STM is a debt collector, attempting to collect the alleged debt.

## RIGHT TO THE AMEND THE ACTION

5.     The Plaintiff expressly reserves the right to amend or withdraw this Complaint at any time to correct service, join other Defendants, and/or Plaintiffs and to add more issues of FACT, and/or add addendums and/or plead additional damages to the Complaint.

## PLAINTIFF IS A PRO PER

6.     "Pleadings in this case are being filed by Plaintiff in **Propria Persona** in **Sui Juris**, wherein pleadings are to be considered without regard to technicalities. **Propria pleadings are not to be held to the same high standards of perfection as practicing lawyers.**" See *Haines v. Kerner* 92 Sct 594, also See Power 914 F2d 1459 (11th Cir1990), also See *Hulsey v. Ownes* 63 F3d 354 (5th Cir 1995) See In Re: *Hall v. Bellmon* 935 F.2d 1106 (10th Cir. 1991).  In *Puckett v. Cox*, it was held

that a pro-per pleading requires less stringent reading than one drafted by a lawyer
(456 F2d 233 (1972 Sixth Circuit USCA).

7.    Justice Black in *Conley v. Gibson*, 355 U.S. 41 at 48 (1957) "The Federal
Rules rejects the approach that pleading is a game of skill in which one misstep by
counsel may be decisive to the outcome and accept the principle that the purpose
of pleading is to facilitate a proper decision on the merits." According to Rule 8(f)
FRCP and the State Court rule, this holds that, all pleadings shall be construed to
do substantial justice.

8.    In viewing the Plaintiff's pro per complaint, **the Court should realize that
the factual allegations (FACTS) state a claim** but might be missing some
important elements that may have not occurred to the Plaintiff.  **Therefore, the
Plaintiff should be allowed to amend or withdraw the complaint if needed at
any time before trial because of discovery or both parties mutual agreement
to modify the loan or to issue new paper**.

9.    Moreover, in analyzing the sufficiency of the Plaintiff's complaint, the Court
need accept as true only the Plaintiff's **well-pleaded factual contentions**, not

his/her conclusory allegations. **The legal sufficiency of a complaint is a question of law.** *See Moore*, 438 F.3d at 1039.

## COUNT ONE

## PRELIMINARY INJUNCTION AND MOTION TO POSTPONE FORECLOSURE PROCESS

10.    <u>Plaintiff hereby alleges that Defendant is and has undertaken acts to unlawfully deprive Plaintiff of title and possession of her property and must be enjoined, to wit:</u>

11.    Defendant's conduct is an attempt to illegally convert the subject property to their own property, if they are permitted to pursue claims that they have failed to verify, based upon the Original Promissory Note, they will have defrauded Plaintiff with non-judicial foreclosure without proof of the true Promissory Notes existence.

12.    Plaintiff requests an order restraining SUNTRUST MORTGAGE INC. and their foreclosure mill attorney, MCCALLA RAYMER, LLC, (MCR) individually and collectively, (henceforth "Foreclosing Party") from continuing to engage in the illegal sale to obtain possession of Plaintiff's property scheduled on May 6, 2014.

13.    Foreclosing Party have proceeded scheduling a non-judicial foreclosure without obtaining the Original Promissory Note, verifying the existence of said Note and **without verifying the Lender has a right to foreclose.**

14.    Further, without finding the true party who retains the Note, and **the holder in due course**, Defendant have failed to prove 'status' as it relates to the owner of the Promissory Note and the 'HOLDER' of the Note;  (a) To prove status of holder of the instrument (UCC §3-4189(d); or (b) To prove status of non-holder in possession of the instrument who has the rights of a holder (UCC §3-301(ii)); or (c) To prove status of being entitled to enforce the instrument as a person not in possession for the instrument pursuant to (UCC §3-309) or (UCC §3-4189(d)).

15.    **SUNTRUST MORTGAGE INC. does not have STANDING to foreclosure as the assignments are instruments that have been materially altered**. And after close examination of the purported "copy" of the note exhibited by the Foreclosing Party, Plaintiff has concluded that it does not contain her signature and that the document has been substantially altered, notwithstanding the fact that it cannot be authenticated. [1]

---

[1] Anyone could stamp an endorsement on a Note on the morning of trial and effectively prohibit inquiry into the circumstances thereof.

16.    Defendant threatens to or is procuring an act in violation of the rights of the Plaintiff respecting the subject property described in paragraph two and the Plaintiff's rights.

17.    Defendant is and was NOT the holder of any instrument, note, and mortgage or otherwise, that would give them the authority to engage in or continue the scheduled sale.

18.    There is no adequate remedy at law or compensation would not be sufficient.

19.    If the unlawful scheduled sale is allowed to happen, this will cause Plaintiff great and irreparable injury in that real property is unique, and Defendant have acquired the Security Deed under **questionable lending practices and predatory acts**.

---

Worse yet, sophisticated defendants with expensive color copiers can re-create an "original" note at the back offices of LPS or DocX and effectively avoid inquiry on subpoena or cross-examination.

If this Court thinks this does not happen, it should look at the criminal prosecution of Lorraine Brown and view a sampling of endorsed notes in foreclosure lawsuits -- most such endorsements are not original, wet-ink signatures, but stamps.

Discovery is authorized and appropriate in any case, including foreclosure. This Court should not effectively eliminate meaningful discovery by allowing the Defendant to obtain the requisite standing right before trial.

20.　　The Plaintiff has suffered, will continue to suffer irreparable harm absent **INJUNCTIVE RELIEF**.

21.　　It is likely that the Plaintiff will prevail on the merits of this Complaint, once the foreclosure sale is stayed.

22.　　The Defendant will not suffer harm, loss or injury.

23.　　The Plaintiff is entitled to the adequate remedy and relief demanded, and injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable damage and harm to Plaintiff.

24.　　Pecuniary compensation would not afford adequate relief; it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief.

25.　　The restraint is necessary to prevent a multiplicity of judicial proceedings or the obligation arises from a deed.

**WHEREFORE**, Plaintiff respectfully requests an Emergency Petition or Emergency Motion for an **ORDER [see page 36]** restraining the commission or

continuance of the acts complained of, either for a limited period or perpetually be signed by the Judge [presiding motion Judge] reviewing this Complaint.

## COUNT TWO

## PRELIMINARY INJUNCTION AND MOTION TO STAY FORECLOSURE PROCESS

26.    Now comes the Plaintiff, re-alleges the foregoing and alleges that following claim for **PRELIMINARY INJUNCTION** against the Foreclosing Party, both individually and/or collectively.

27.    On or about the date of February 28, 2008, Plaintiff executed a promissory note and security deed naming KELLER WILLIAMS BROKERS (KWB) as the other party to the note and as the lender and mortgagee of record.

28.    Subsequently, a Security Deed was recorded on the date of February 29, 2008, naming KWB as the mortgagee of record.

29.    None of the foreclosing parties are entitled under the note or security deed to contact the Plaintiff, obtain Plaintiff's information, and certainly take the title of

the Plaintiff's property then seek possession of the same, or to dispossess the Plaintiff.

30.    The Plaintiff has served notice of her intent **to seek an emergency injunction and other relief against the actions** undertaken by the Defendant and Defendant's foreclosure mill attorney MCR.

31.    MCR, Defendant's foreclosure mill attorney, served a defective Notice of Foreclosure Sale, *See* **EXHIBIT "1"** attached, upon the Plaintiff on the date of March 24, 2014 and the next wrongful and unlawful attempted sale is imminent. [2]

32.    The Notice of Foreclosure Sale [default] letter fails to mention that the Security deed was not retained or properly held by the Foreclosing Party at the time the Notice of Default was mailed or at the time the property was being

---

[2] Only the documented lender/holder of the note can foreclose on said property. OCGA-44-14-162-2 requires that the current holder of the mortgage loan record the assignment of the security deed, which shows the present owner of the mortgage loan, in the public record of the clerk of superior court of the county in which the real property is located before conducting the foreclosure sale.

The designated entity authorized to negotiate and modify is NOT noted. This is in violation of OCGA § 44-14-162.2

Both the National and Georgia Uniform Commercial Code in 11-201(2) provide aggrieved parties are entitled to resort to a remedy. The Georgia Code in 11-1-201 (34) "'**Remedy**' means any remedial right to which an aggrieved party is entitled with or without resort to a tribunal."

advertised in a newspaper, no mention of the secured creditor, no mention of securitization.

> **NOTE**:  The Defendant STM ignored the Consent Order (AA-EC-13-01)
>
> from the Office of the Comptroller of the Currency and the FDCPA rule and
>
> had Defendant's foreclosure mill attorney, MCR, send the Plaintiff a "Notice
>
> of Default" letter stating that the foreclosure was scheduled for May 6, 2014.
>
> http://occ.gov/news-issuances/news-releases/2013/nr-occ-2013-7a.pdf

33.   The Defendant (Foreclosing Party) does not have the legal right to undertake the sale scheduled the May 6, 2014 because:

> A) The Foreclosing Party failed to meet the notice requirements and
>
> conditions precedent to the statutory right to foreclose;
>
> B) The Defendant is and was not the mortgagee of record;
>
> C) Defendant had not been given the "power of sale" as required by law;
>
> D) Defendant was not the holder of the original note and mortgage or
>
> security deed;
>
> E) Assuming for a moment that the purported security deed is valid, each
>
> part had been bifurcated so that the security deed is not an encumbrance
>
> against property described in the notice; additionally, after being duly

notified, the Foreclosing Party had failed to comply with the disclosure requirements under the Truth in Lending Law, known as Section 6 (e) of the **Real Estate and Settlement Procedures Act**, 12 USC § 2605 (e), of which this Court has concurrent jurisdiction with the United States District Court. The foreclosure sale must be postponed.

**FURTHERMORE,**

F) The foreclosing parties are in violation of the **Fair Debt Collection Practices Act**, of which this Court has jurisdiction for undertaking an unfair and deceptive fraudulent and deceptive collection practices, involving false statements together with instruments that have been materially alters, assuming them to be valid at all;

G) Defendant have ignored and failed to comply with State statutes regarding net Tangible benefit to a borrower, O.C.G.A. § 7-6A-4.

H) And after close examination of the purported "copy of the note" supplied by the Foreclosing Party, Plaintiff has concluded that it does not contain her signature and that the document has been substantially altered, notwithstanding the fact that it cannot be authenticated.

34. Defendant threatens to or is procuring an act in violation of the rights of the Plaintiff respecting the subject property described herein and the Plaintiff's rights.

35.    Defendant is and was not the holder of any instrument, note, Security deed

or otherwise, that would give them the authority to engage in the scheduled

pending foreclosure sale. [3]

36.    There is no adequate remedy at law or compensation would not be sufficient.

37.    If the scheduled sale is allowed to happen, **this will cause Plaintiff great

and irreparable injury in that real property is unique,** and Defendant have

acquired the Security Deed under questionable lending practices and predatory

acts.

38.    It is likely that the Plaintiff will prevail on the merits of this Complaint, once

the foreclosure sale is stayed.

---

[3] A "holder is defined as a person who is in possession of a document of title or an instrument..." O.C.G.A. 11-1-201(20). A holder takes an instrument for value "to the extent that the agreed considerations have been performed or that he acquires a security interest in or a lien on the instrument otherwise than by legal process..." O.C.G.A. 11-3-303(a). Pursuant to O.C.G.A. 11-3-302. A holder must also take the instrument in good faith. O.C.G.A. 11-3-302(1)(b). Good faith is defined as "honesty in fact in the conduct or transaction concerned." O.C.G.A. 11-1-201(19). To constitute bad faith, a purchaser must have acquired the instrument "with actual knowledge of its infirmity or with a belief based on the facts or circumstances as know to the purchaser that there was a defense or the purchaser must have acted dishonestly." *Citizens & Southern Nat'l Bank v. Johnson*, 214 Ga. 229, 231, 104 S.E.2d 123, 126 (1958).

"Holder" with respect to a negotiable instrument, means the person in possession if the instrument is payable to bearer or, in the case of an instrument payable to an identified person. In order to be a holder in due course, a holder must take the instrument without notice of default or defense. O.C.G.A. 11-3-302(1)(c).  A person has "notice" of a fact when he has actual notice of it or has received a notice or notification of it. See *Hopkins v. Kemp Motor Sales, Inc.* 139 Ga. App. 471, 473, 228 S.E.2d 607, 609 (1976). Holding that knowledge of a fact as defined in the UCC is actual knowledge. Therefore you could have never been, can never be, the holder in due course.

39.   The Defendant (Foreclosing Party) will not suffer harm, loss or injury.


40.   The Plaintiff is entitled to the adequate remedy and relief demanded, and **INJUNCTIVE RELIEF** prayed for is necessary and appropriate at this time to prevent irreparable damage and harm to Plaintiff and possibly others.


41.   Pecuniary compensation would not afford adequate relief; it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief.


42.   The restraint is necessary to prevent a multiplicity of judicial proceedings or the obligation arises from a security deed.


**WHEREFORE**, Plaintiff respectfully requests an order restraining the commission or continuance of the acts complained of, either for a limited period or perpetually.

## COUNT THREE

## PRELIMINARY INJUNCTION AND MOTION TO STAY FORECLOSURE PROCESS

43.    Now comes the Plaintiff, re-alleges the foregoing and alleges that following

claim for **PRELIMINARY INJUNCTION** against the Foreclosing Party, both

individually and collectively.

44.    The Plaintiff has served notice of her intent to seek an emergency injunction

and other relief against the actions undertaken by the Defendant and Defendant's

foreclosure mill attorney MCR.

45.    Plaintiff is now, and at all times mentioned in this Complaint has been, the

owner of certain described real property as alleged previously. [4]

---

[4] ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 228 OF THE 6TH DISTRICT OF GWINNETT COUNTY, GEORGIA, BEING LOT 1 AND A PORTION OF LOT 2, BLOCK C OF BERKELY HILLS SUBDIVISION, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT AN IRON PIN FOUND AT THE INTERSECTION OF GREEN STREET (A 60 FOOT RIGHT OF WAY) AND THE WESTERLY RIGHT OF WAY OF POND ROAD (AN 80 FOOT RIGHT OF WAY, SAID POINT ALSO BEING THE NORTHEAST CORNER OF LOT 1 OF SAID BLOCK, UNIT, AND SUBDIVISION; RUN THENCE SOUTH 18 DEGREES 39 MINUTES 04 SECONDS EAST ALONG THE RIGHT OF WAY OF POND ROAD A DISTANCE OF 62.55 FEET TO A POINT; RUN THENCE SOUTHEASTERLY ALONG SAID RIGHT OF WAY, AND FOLLOWING THE CURVATURE THEREOF AN ARC DISTANCE OF 108.49 FEET TO A POINT; RUN THENCE SOUTH 41 DEGREES 50 MINUTES 11 SECONDS EAST, ALONG SAID RIGHT OF WAY A DISTANCE OF 167.84 FEET TO A POINT; RUN THENCE SOUTH 49 DEGREES 02 MINUTES 22 SECONDS WEST A DISTANCE OF 15.79 FEET TO A POINT; RUN THENCE SOUTH 41 DEGREES 50 MINUTES 11 SECONDS EAST A DISTANCE OF 26.97 FEET TO AN IRON PIN SET, RUN THENCE SOUTH 79 DEGREES 32 MINUTES 31 SECONDS WEST ALONG THE LINE OF PROPERTY NOW OR FORMERLY BELONGING TO HOPKINS. A DISTANCE OF 270.78 FEET TO AN IRON PIN SET; RUN THENCE NORTH 21 DEGREES 41 MINUTES 16 SECONDS WEST A DISTANCE OF 76.39 FEET TO AN IRON PIN SET; RUN THENCE NORTH 19 DEGREES 23 MINUTES 31 SECONDS WEST A DISTANCE OF 46.77 FEET TO AN IRON PIN SET. RUN THENCE NORTH 65 DEGREES 48 MINUTES 45 SECONDS EAST A DISTANCE OF 22.67 FEET TO AN IRON PIN SET; RUN THENCE NORTH 17 DEGREES 14 MINUTES 31 SECONDS WEST ALONG THE LINE DIVIDING LOTS 1 AND 2 OF SAID BLOCK AND SUBDIVISION A DISTANCE OF 178.20 FEET TO AN IRON PIN FOUND ON THE SOUTHERLY RIGHT OF WAY OF GREEN STREET; RUN THENCE IN A NORTHEASTERLY DIRECTION LONG THE RIGHT OF WAY OF GREEN STREET A DISTANCE OF 162.34 FEET TO THE IRON PIN FOUND AT THE POINT OF BEGINNING.

46.     Foreclosing Party comes into without clean hands. The Foreclosing Party

along with NATIONSTAR MORTGAGE LLC wrongfully and unlawfully in the

past have scheduled eight (8) non-judicial foreclosures; starting with a sale

scheduled for April 2010, June 2010, June 2011, September 2011, February 2012,

April 2013, August 2013, February 2014.  All eight unlawfully scheduled

foreclosures of the described property of the Plaintiff without obtaining the

Original Promissory Note and without verifying the existence of said Note.


47.     The question to ask is why did they not go through with these scheduled

sales? Answer – because they were wrongful and unlawful as they were not the

Holder in Due Course, nor could they prove that they were.


48.     Since about March 10, 2010 [*see* first Notice of Sale **EXHIBIT "2"**] and

continuing to the present, MERS, NATIONSTAR MORTGAGE, LLC, and now

the Defendant STM have all wrongfully and unlawfully sought to foreclosure on

the described property of the Plaintiff without success.  **THIS IS BECAUSE THE**

**PRIOR SERVICER AS WELL AS THE DEFENDANT HAVE NO**

**AUTHORITY TO HOLD A FORECLOSURE SALE OR TO FORECLOSE**

**AS IT IS NOT THE REAL PARTY IN INTEREST OR THE HOLDER IN**

## DUE COURSE OF ANY NOTE, SECURITY DEED OR OTHER INSTRUMENT WHICH PURPORTS TO SECURE THE PROPERTY.[5]

49.    On or about February 8, 2013 and at other times between that date and the present, Plaintiff has demanded that Defendant refrain from committing the above named acts and prove up that they have standing, but Defendant has refused to and has threatened to and has continued such acts.

50.    Plaintiff cannot be fully compensated in damages, is without an adequate remedy at law because **the exact amount of damage Plaintiff will sustain will be difficult to determine**, and the Defendant has acted with the intent to wrongfully deprive Plaintiff of Plaintiff's property at least four times in the past. Defendant's actions are outrageous and go beyond standards or social dignity. Defendant's continuous ongoing actions over the past four years have caused plaintiff to suffer from severe emotional, mental and physical distress that has gone beyond embarrassment and humiliation.

---

[5] Only the Holder in Due Course is allowed in Georgia courts to make claims or enforce any rights regarding the mortgage and note. No servicer (e.g. Countrywide), administrator (e.g. MERS), or trustee has any right to do a non-judicial foreclosure because they are not the holder "in due course." As stated above, in order to qualify as a Holder in Due Course, the first requirement is that you MUST have an economic interest, which means that the money is owed to you and not someone else. If the money on my mortgage is owed to anyone it is owed to investors or the Federal government which paid off many of these loans. If anyone has a right to be in court, it is the investors or the government. The funny thing here is that they won't step up and make the claim because THAT would expose them to liability for predatory lending, usury, fraud and dozens of other claims from the borrower.

51.    As a further result of Defendant's acts, if these acts are permitted to continue, Plaintiff will be irreparable damaged and an additional amount that will be alleged when additional damages have been determined. [Real property in Georgia is inherently unique and it is and will be impossible for Plaintiff to determine the precise amount of damage Plaintiff will endure.]

**WHEREFORE,** Plaintiff demands judgment for:

A) Temporary or Permanent Injunction enjoining the foreclosing parties from engaging, selling or attempting to sell or dispose of or committing any act that will affect the title of the afore mentioned property and

B) Costs of this action and other just relief that the Courts deems right and necessary.

## COUNT FOUR

### VIOLATIONS OF FAIR DEBT COLLECTION PRACTICES

### ACT (FDCPA): 15 USC § 1692 ET SEQ

52.    Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs and sues the Defendant.

53.    Plaintiff has been the victim of Unfair and Deceptive Business Practices and Defendant have violated the Uniform Deceptive Trade Practices Act, Title 10 generally, and O.C.G.A § 10-1-372 specifically.

54.    Plaintiff has further been plagued due to Defendant's violations of Georgia Fair Lending Statute, Generally Title 7, and O.C.G.A § 7-6A-1.

55.    The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above – cited provisions of the FDCPA, 15 USC § 1692 et seq.[6]

56.    As a result of each and every violation of the FDCPA, Plaintiff is entitled to any actual damages pursuant to 15 USC § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 USC § 1692k(a)(2)(A); and, reasonable attorney's fees and costs, if any, pursuant to 15 USC § 1692k(a)(3) from each and every Foreclosing Party, jointly and severally.

---

[6] Plaintiff is exercising their rights under the **"Fair Debt Collections Practices Act"** as codified at 15 USC § 1692, which stipulates that a debt collector must, if requested, provide validation of the alleged debt, i.e. validate the debt, per "The Fair Debt Collections Practices Act", "FDCPA". **The debt collector (Foreclosure Attorney, Bank, Mortgage Servicer and Alleged Lender) is mandated under "FDCPA" to <u>cease and desist ALL collection and foreclosure activity until validation of the original note is provided.</u>**

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff demands that judgment be entered Defendant and that

Plaintiff be awarded damages from Defendant as follows:

A) An award of statutory damages of $1,000.00 pursuant to 15 USC §

1692k(a)(2)(A):

B) An award of costs of litigation and reasonable attorney's fees, if any,

pursuant to 15 USC § 1692k(a)(3);

C) An award of actual damages;

D) Pursuant to the seventh amendment to the Constitution of the United

States of America, Plaintiff is entitled to, and demands, a trial by jury on

all issues so triable as a matter of law.[7]

---

[7] Amendment VII

In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law.

## COUNT FIVE

## REAL ESTATE & SETTLEMENT PROCEDURES ACT, VIOLATION OF DISCLOSURE REQUIREMENTS, 12 USC §§ 2601 ET SEQ. AND QWR ACCOUNTING

57.     This is an action for damages brought by an individual consumer, the Plaintiff, who now sues Defendant for violations the Real Estate Settlement Procedures Act, 12 USC §§ 2601 et seq. ("RESPA"). Specifically, Plaintiff seeks the remedies as provided in RESPA for Defendant's failures to respond to requests for the identity of the creditors of Plaintiff's mortgage loan as required by 12 USC § 2605(e)[8]

58.     The Plaintiff asks the Court to force the disclosure of the identity of the creditor who actually has a negative account balance on their books for the loan, directly or indirectly, and seek modification or settlement based upon the facts of the case. HAMP modification is impossible, settlement is impossible without first

---

[8] Section 6 of the Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. § 2605 (e), sec. 2601 and § 2609. This demand is binding upon every principal and agent re subject matter set forth. Per the FDCPA, as codified at 15 USC § 1692, **the debt collector [servicer] is mandated to cease and desist all collection activity and stop any foreclosure proceedings until verification and validation of the ORIGINAL NOTE is provided to the homeowner**. Plaintiff sent the Defendant QWR and FDCPA letters, so they have nowhere to hide. In this action the motion becomes a petition to enforce the RESPA 6 inquiry and the FDCPA inquiry either through direct order or through discovery.

establishing who could submit a credit bid at auction or who could execute a valid satisfaction and release of the debt.

59.    Defendant is NOT the creditor; they cannot show proof of loss, proof of payment or any financial transaction that would entitle them to enforce an invalid note or foreclose on an invalid, unperfected mortgage lien

60.    This honorable Court has both personal and subject matter jurisdiction to hear this case pursuant to 28 USC §§ 157(b)(2), 1334.

61.    This honorable Court has supplemental jurisdiction to hear all state law claims pursuant to 28 USC § 1367.

62.    This honorable Court has jurisdiction to hear the claims for relief under the Real Estate Settlement Procedures Act pursuant to 28 USC § 2614.

63.    Venue lies in this District pursuant to of 28 USC § 1391(b).

## FACTS

64.    Plaintiff re-alleges the statements made previously regarding the note and security deed.

65.    To the best of Plaintiff's knowledge, information and belief, this mortgage lien is serviced by the Defendant but that is uncertain as this information is not available to the Plaintiff and partially forms the basis of this complaint.

66.    Plaintiff believes and therefore alleges that the true holder and owners of the note relating to this mortgage lien is or are unknown and Defendant have refused to disclose this information.

67.    The Plaintiff alleges that the Note no longer exists as it was deliberately destroyed by MERS, KELLER WILLIAMS BROKERS, NATIONSTAR MORTGAGE, or one of the Foreclosing Party or parties unknown.[9]   *"Where the defending party cannot prove the existence of the note, then there is no note".*

---

[9] There may be fraud upon the court in that the named Defendant may not have ANY interest to the note and that the supposedly lost note is not lost, **but may have been intentionally destroyed due to missing assignments on the note** which may have made it void and a legal nullity, thus they have exploited key and vital evidence; Where the complaining party cannot prove the existence of the note, then there is no note. See *Pacific Concrete F.C.U. V. Kauanoe,* 62 Haw. 334, 614 P.2d 936 (1980), *GE Capital Hawaii, Inc. v. Yonenaka* 25 P.3d 807, 96 Hawaii 32, (Hawaii App 2001).

68.    The mortgage lien is a **"federally related mortgage loan"** as defined in 12

USC §2602(1) and therefore subject to RESPA.


69.    Plaintiff's February 25, 2013 letter to Defendant [*see* **EXHIBIT "3"**] is a

"Qualified Written Request" (QWR) as defined in §6(e)(1)(B) of the RESPA [12

USC § 2605(e)(1)(B)]. Thus Plaintiff's QWR letter had the dual effect of invoking

Plaintiff's right under RESPA §6(e)(1).


70.    Defendant failed to acknowledge receipt of the QWR within 20 days as

required by USC § 2605(e)(1)(A) as amended effective July 16, 2010 by the Dodd-

Frank Financial Reform Act and Reg. X Section 3500.21(e)(1).


**WHEREFORE**, the Plaintiff having set forth her claims for relief against the

Defendant respectfully prays of the Court as follows:

---

To recover on a promissory note, the plaintiff must prove: (1) the existence of the note in question; (2) that the party sued signed the note; (3) that the plaintiff is the owner or holder of the note; and (4) that a certain balance is due and owing on the note. See *In Re: SMS Financial LLC. v. Abco Homes, Inc*. No.98-50117 February 18, 1999 (5th Circuit Court of Appeals.)

It would seem that the mortgagor would normally have a Common law right to demand production or surrender of the bond or note and mortgage, as the case may be. See Restatement, Contracts S 170(3), (4) (1932); C.J.S. Mortgages S 469, in *Carnegie Bank v, Shalleck* 256 N.J. Super 23 (App. Div 1992), the Appellate Division held, "When the underlying mortgage is evidenced by an instrument meeting the criteria for negotiability set forth in N.J.S. 12A:3-104, the holder of the instrument shall be afforded all the rights and protections provided a holder in due course pursuant to N.J.S. 12A:3-302"

A) That the Plaintiff be granted relief provided by RESPA as to the violation of RESPA set forth above, including statutory damages in the amount of $2,000.00; and that

B) Plaintiff be granted actual damages if any be proven, reasonable attorney's fees, costs expended in this proceeding;

C) Real Property in Georgia is inherently unique and it is and will be impossible for Plaintiff to determine the precise amount of damage Plaintiff will endure. Therefore, **Plaintiff has such other and further relief as the Court may deem just and proper**.

## COUNT SIX

### CANCEL OR POSTPONE SALE

71.   Plaintiff sues Defendant SUNTRUST MORTGAGE INC. as TRUSTEE to cancel or vacate the sale of plaintiff's property, re-alleges the foregoing and alleges:

72.     Jurisdiction and venue are proper and the Plaintiff has served notice of her

intent to seek restraining orders and other relief against the actions undertaken by

the Foreclosing Party.


73.     This is an action to immediately cancel or postpone the unlawful foreclosure

sale of the property scheduled for the 9th time on May 6, 2014 -- described herein

that does not exceed the jurisdictional limit for this Court, excluding interest, costs

and attorneys fees.


74.     Since the first foreclosure attempt by the Defendant in April 2010, Plaintiff

has requested via written request authenticated copies showing the existence of

said promissory note along with testimony showing the Defendant possessed the

original, endorsed Note... all to no avail. Plaintiff has requested authenticated

copies showing the existence of said promissory note to MERS, KELLER

WILLIAMS BROKERS, NATIONSTAR MORTGAGE and Defendant -- but not

one has produced it.[10]

---

[10] *With so little evidence required to take someone's home, is it really much to ask that the Defendant introduce some evidence that it possessed the Note before foreclosing on Plaintiff's property?*

*A bank's **inability to introduce a single business record or a single sentence of testimony showing it possessed the original, endorsed Note is a question of great public importance,** worthy of Georgia Supreme Court consideration. With all due respect, when in history has this Court ever changed the law (or suggested another court do so), in the face of stare decisis, because one particular type of defendant in one particular type of case was systematically unable to meet its burden of proof, particularly where the requisite proof was so simple?*

75.    Since April 2010, Plaintiff has requested authenticated copies [not just copies] of the alleged note establishing that the Defendant is the owner or holder of such a note, yet the Defendant has failed to produce any such records. Maybe this is why May 6th is the 9th time they have set a foreclosure date.

76.    A remedy is quickly, easily and affordably available to resolve this matter (i.e. Have the Defendant produce the **ORIGINAL NOTE** showing the endorsement or allonge for evidentiary inspection). To deny the Plaintiff this opportunity is to deny the rights of any and all homeowners in the State of Georgia, justice **in the face of widespread DOCUMENTED loan document fraud** and irregularities in the banking industry.[11]

77.    The Defendant is NOT the owner or holder of any purported note or mortgage instrument that would entitle the Defendant to hold a foreclosure sale. Not back in April of 2010 and not now in May 2014.

78.    Plaintiff needs to know the correct information of the current holder of the mortgage note. Federal law requires that any change in the identity of Plaintiff's

---

[11] **UPDATE 10-11-13: SunTrust** was forced to settle with the government over the actions in this story which was first reported at Growth Capitalist. They had **to pay** over $1 billion dollars which lead to a negative 33 cent per share hit to earnings. **http://www.teribuhl.com/2012/11/13/regulators-investigate-suntrust-bank-for-fraud/**

secured creditor be disclosed to the Plaintiff. In Georgia, in order to foreclose, the secured creditor is the one whose proper identity needs to be submitted for the advertisement of the foreclosure notice. The identity should be advertised a full 30 days before being able to foreclose on the courthouse steps. This is not the case with Plaintiff's advertisement. *See* **EXHIBIT "1".**

79.   The Foreclosing Party failed to meet the notice requirement, and/or conditions precedent to the statutory right to foreclose in April of 2010 and now they have failed to meet same for the unlawful scheduled sale May 6, 2014. [12]

80.   The Defendant is and was not the mortgagee of record.[not in 2010 and not now]

81.   The Defendant had not been given the "power of sale" as required by law.

82.   The Defendant is not the holder of the note and mortgage or security deed.

---

[12] Georgia Statutes requires that the **Creditor** advise the homeowner of the "individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor." O.C.G.A. § 44-14-162.2. Not the Servicer. Georgia's nonjudicial foreclosure statute authorizes the *SECURED CREDITOR* to foreclose in conformity with O.C.G.A. §§ 44-14-162 *et seq.*2 The secured creditor – the entity to whom the debt is owed – is **authorized to foreclose pursuant to Georgia's nonjudicial foreclosure statute.** Sections 162 and 162.2 in 2008 make clear that the identity of the Secured Creditor conducting the sale is a material element of that notice.

83.   Assuming for a moment that the purported security deed and note are valid, each part had been bifurcated so that the security deed is not an encumbrance against the property described in the notice.[13]

84.   After being duly notified about the upcoming May 6, 2014 sale, the Foreclosing Party had failed to comply with the disclosure requirements under the Truth in Lending Law, known as the Section 6(e) of the **Real Estate and Settlement Procedures Act**, 12 USC § 2605(e), of which this Court has concurrent jurisdiction. The scheduled foreclosure sale must be postponed or canceled. [14]

---

[13] MERS, as nominee and mortgagee, has recently been well-defined in NY cases like *Bank of New York v. Silverberg (2011)* upholding *Carpenter v. Longan (1872)* where an assignment of the Deed without the Note is a nullity. Courts across the country have wrestled with the fact that MERS does not own the Note and that under the MERS scheme the Note and Deed have been bifurcated. MERS eventually stopped foreclosing in their name. Unless MERS took possession of the Note prior to commencing foreclosure the courts were ruling that MERS had no standing. The recording statutes of every state in the union have been violated. 105. The fabricated Assignments were prepared by specially selected law firms and companies that solely specialized in providing "mortgage default services" to the MBS/Trusts and their Servicers. In Georgia, it is estimated that over ninety percent (90%) of the filed Mortgage Assignments in the last three years were prepared, fabricated, and filed by the same five or six law firms and default processing companies. In most cases, the Note and Mortgage were severed or bifurcated at the closing table with the Mortgage being recorded in the name of MERS as "nominee" for the original lender. However, the original lender never actually loaned any money to the homeowner. The original lender was never owed or paid any money under the terms of the Note. There the Mortgage sat for years in the name of an entity, MERS, for which the homeowner owed no money and which would never be beneficiary under the Note. As previously set out, often the MERS held the Mortgage as "nominee" for a lender who was out of business and/or liquidated in bankruptcy.

[14] Breach of the statutory duty upon mortgagee to exercise fairly and in good faith the power of sale in a deed to secure debt is a tort compensable at law, and entitles the debtor to punitive damages where appropriate. *Clark v. West*, 196 Ga. App. 456, 457, 395 S.E.2d 884, 886 (Ga. Ct. App. 1990); see, e.g., *Curl v. First Federal Savings & Loan Assn.*, 243 Ga. 842, 843-844(2), 257 S.E.2d 264 (1979) (affirming award of actual and punitive damages in an action for wrongful foreclosure); *Decatur Investments Co. v. McWilliams*, 162 Ga. App. 181, 181, 290 S.E.2d 526, 527 (1982) (affirming award of punitive damages in a wrongful foreclosure action where debtor provided sufficient evidence of creditor's bad faith).

**FURTHERMORE,**

85.    The foreclosing parties are in violation of the **Fair Debt Collection**

**Practices Act**, of which the Court has jurisdiction for undertaking an unfair and

deceptive collection practice, involving false statements together with instruments

that have been materially altered, assuming them to be valid at all. [robo-signed

assignments]

86.    The Defendant's fraudulent assignments create both patently and latently a

defective deed, which slanders the title of Plaintiff's property foreclosed upon

relying upon an assignment with the fraudulent attestation causing Plaintiff

damages.

87.    An action for damages for emotional distress in a wrongful foreclosure

action is treated as an action for intentional infliction of emotional distress, and the

plaintiff has the burden to prove intentional conduct to cause harm. *Mc Carter v.*

*Banker Trust Co.*, 543 S.E.2d 755, 758 (Ga. Ct. App. 2000).

88.    **There should be no FORECLOSURE ACTIVITY** until validation to

show proper "*Chain of Custody*" and that Defendant prove up a RIGHT to enforce

the alleged Note.  The Defendant needs to show this Court where they got the alleged Note showing the endorsements and/or allonge – the '***Chain of Custody***' from the Original Lender to itself.

89.    UCC 3:309(2) states that the Defendant must 'prove' its right to enforce the Note. They could not prove up in April 2010 and they cannot prove up now.

**90.    There should be no foreclosure conducted until proper and complete validation has been received and proven to this Honorable Court along with the Defendant proving its right to enforce the note.    [Something NATIONSTAR or Defendant have not been able to do since April 2010]**

91.    IN THIS ACTION THE MOTION BECOMES A PETITION TO ENFORCE INQUIRY EITHER THROUGH DIRECT ORDER OR THROUGH DISCOVERY FOR THE DEFENDANT **TO PROVIDE THE FOLLOWING**:

   (1. Produce documentation of prior title, ownership and rights to the money they purportedly loaned Plaintiff.

   (2. A certified copy of the original alleged note accompanied by an AFFIDAVIT from the alleged lender showing Chain of Custody.

(3. Provide "Proof of Secured Creditor" status. See O.C.G.A. Section 18-2-80 (a) Principals of Law and Equity remain applicable.

(4. Identify to what the alleged debt pertains.

(5. Provide details how the alleged debt was calculated. *Field v. Wilber Law Firm, Donald L. Wilber and Kenneth Wilber*, USCA-02-C-0072, 7th Circuit Court, September 2004.

(6. Provide copies of any papers that show that Plaintiff agreed to pay the alleged debt.

(7. Identify the original creditor/lender and that prove that the Lender did not sell the alleged NOTE to Fannie Mae the day it was signed.

(8. Provide the agreement/endorsements between the creditor and your firm which authorizes Defendant to collect funds (***without a contract, Defendant has no right to foreclose***).

(9. Provide evidence that the **Statute of Limitations** has not expired on this account. When was the last payment from the Plaintiff received?

(10. Production of proof of payment at origination and all transfers upon which the lender relies for its authority to collect the money.

(11. Provide proof of loss by access to those people who might have received an assignment of the loan of who have a back-door ownership interest in the loan through ownership of a derivative or credit default swap.

92.    Plaintiff demands that Defendant provide proof that shows the alleged

mortgage was transferred according to the PSA or as required by Georgia law,

showing that the trustee would possess the authority to foreclose in the event of a

default by the homeowner.


93.    Plaintiff demands the following documents from Defendant:

A) The bookkeeping and accounting documents of the source of funds for
the principal

B)  The documents that identifies the account that was debited when the loan
account was created

C) A sworn copy of the accounting, under penalty of perjury and on the
bank's commercial liability, **showing that the loan came from the bank or
from the originator** (history and origin of funds)

D) A validation of the debt in the form of an affidavit or a signed invoice


94.    Plaintiff demands that the Defendant provide the accounting data that shows

the loan receivables on their books and produce documentation of prior title and

ownership and rights to the money loaned to the plaintiff.

## AT THE BASIC CORE AND CAUSE OF PLAINTIFF'S COMPLAINT DEFENDANT MUST PROVE THESE ISSUES OF FACT:

A)   Defendant is Holders In Due Course;

B)   Defendant must prove possession of a <u>valid</u> Original Note and the Security Deed -- **the original contract with the 'wet ink' signatures of both parties. Plaintiff reserves the right to inspect it for authenticity;**

C)   Defendant must prove validity of Sale Under Power.

D)   Defendant must prove that they have **STANDING** to sue.

E)   Defendant must prove that they loaned money not credit.

F)   Defendant must prove that they complied with UCC § 1-310 Subordinated Obligations.

G)   Defendant must prove that they complied with UCC § 1-304 Obligations of Good Faith.

H)   Defendant must prove a Security Interest. **Black 6th page 1357.**

I)   Defendant must prove that they are in compliance with the "Clean Hands" Doctrine. **Black 6th page 250.**

## JURY DEMAND

95.   Plaintiff hereby demands a trial by jury on all issues so triable. FRCP Rule "38".

## PRAYER FOR RELIEF

96.   Preliminary injunction staying any foreclosure or further collection activity until Defendant(s) discloses and shows cause establishing the true and accurate balance on Plaintiff's loan account;

1. Prelitigation discovery ordering Defendant to disclose and turn over any and all servicing agreements, master servicing agreements, loss-share agreements, pooling agreements, and any other collateral source identifying Defendant's receipt of remuneration in servicing Plaintiff's loan.

2. Prelitigation discovery ordering Defendant to disclose and turn over any and all servicing agreements, master servicing agreements, loss-share agreements, pooling agreements,  and any other instrument establishing any and all interests of third-parties in Plaintiff's loan.

3. Accounting of all charges on, against or towards the loan, including all credits, debits, and set offs.

4. Compensatory damages in an amount to be determined by the conscience of an enlightened jury, as to be further determined by Defendant's prelitigation discovery disclosures.

**THEREFORE**, Plaintiff respectfully requests an order postponing and canceling the foreclosure sale scheduled for May 6, 2014 and for costs as deemed appropriate by this court

I respectfully submit this action to this honorable Court on this day 2nd of April 2014.

By: _Fareeda L. Khader_

    Fareeda L. Khader,
    Sui Juris in Propria Persona
    2153 Pond Road
    Duluth, GA 30096
    770-458-5071

# VERIFICATION

STATE OF GEORGIA         )

                               ss

COUNTY OF GWINNETT   )

I, **Fareeda L. Khader** , proceeding in Sui Juris in Propria Persona and under penalty of perjury state the following: I am over the age of 21 and competent to testify in all matters concerning the foregoing Complaint; I have prepared and read the foregoing Complaint, the pleadings and defenses set forth herein, which comes from my first-hand knowledge, information and belief, formed after reasonable enquiry, believes that they are well grounded in fact and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that they are not interposed for any improper purpose such as or needlessly increase the cost of litigation. All of the statements are true and correct.  Everything I have stated is true to the best of my knowledge and belief.

Fareeda L. Khader
2153 Pond Road
Duluth, GA 30096
770-458-5071

Sworn to and Subscribed Before Me

This _2us_ day of April, 2014

D BROWN
NOTARY PUBLIC
GWINNETT COUNTY, GEORGIA
MY COMM. EXPIRES
11/08/2016

NOTARY PUBLIC, State of Georgia

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Fareeda L. Khader,<br>Plaintiff<br><br>v.<br><br>SUNTRUST MORTGAGE INC.<br><br>Defendant | CIVIL ACTION<br>FILE NO: |

## ORDER

This matter having been heard before this court on Plaintiff's Complaint for Injunctive Relief, and the court having been properly advised in the premises, it is HEREBY ORDERED AND ADJUDGED,

Granting Plaintiff's motion for stay of the pending foreclosure sale and granting the petition of injunctive relief until the Defendant complies with the legal disclosure requirements and provides proof to this court that it is the holder or owner of the bona-fide note and security deed.

DATED this _____ day of _____ 2014

_____

**JUDGE:**

# EXHIBIT "1"
## DEFECTIVE NOTICE OF SALE

NOTICE OF SALE
UNDER POWER
GEORGIA, GWINNETT COUNTY

Under and by virtue of the Power of Sale contained in a Security Deed given by Fareeda Khader
to Mortgage Electronic Registration Systems, Inc., dated February 29, 2008, recorded in Deed
Book 48709, Page 15, Gwinnett County, Georgia Records, as last transferred to SunTrust
Mortgage, Inc. by assignment recorded in Deed Book 52241, Page 634, Gwinnett County,
Georgia Records, conveying the after-described property to secure a Note in the original
principal amount of THREE HUNDRED FOUR THOUSAND AND 0/100 DOLLARS
($304,000.00), with interest thereon as set forth therein, there will be sold at public outcry to the
highest bidder for cash before the courthouse door of Gwinnett County, Georgia, or at such place
as may be lawfully designated as an alternative, within the legal hours of sale on the first
Tuesday in **May, 2014**, the following described property: SEE EXHIBIT A ATTACHED
HERETO AND MADE A PART HEREOF
The debt secured by said Security Deed has been and is hereby declared due because of, among
other possible events of default, failure to pay the indebtedness as and when due and in the
manner provided in the Note and Security Deed. The debt remaining in default, this sale will be
made for the purpose of paying the same and all expenses of this sale, as provided in Security
Deed and by law, including attorneys fees (notice of intent to collect attorneys fees having been
given).
Said property will be sold subject to any outstanding ad valorem taxes (including taxes which are
a lien, but not yet due and payable), any matters which might be disclosed by an accurate survey
and inspection of the property, any assessments, liens, encumbrances, zoning ordinances,
restrictions, covenants, and matters of record superior to the Security Deed first set out above.
SunTrust Mortgage, Inc. is the holder of the Security Deed to the property in accordance with
OCGA 44-14-162.2. The entity that has full authority to negotiate, amend, and modify all terms
of the mortgage with the debtor is: Suntrust Mortgage, Inc., 1001 Semmes Avenue, Richmond,
VA 23224, 866-384-0903.
To the best knowledge and belief of the undersigned, the party in possession of the property is
Fareeda Khader or a tenant or tenants and said property is more commonly known as 2153 Pond
Road, Duluth, Georgia 30096.
The sale will be conducted subject (1) to confirmation that the sale is not prohibited under the
U.S. Bankruptcy Code and (2) to final confirmation and audit of the status of the loan with the
holder of the security deed.
SunTrust Mortgage, Inc. as Attorney in Fact for Fareeda Khader
McCalla Raymer, LLC 1544 Old Alabama Road Roswell, Georgia 30076
www.foreclosurehotline.net MR/krc1 2/4/14 Our file no. 5654910-FT2

EXHIBIT A
ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 228 OF THE 6TH
DISTRICT OF GWINNETT COUNTY, GEORGIA, BEING LOT 1 AND A PORTION OF LOT 2,

BLOCK C OF BERKELY HILLS SUBDIVISION, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT AN IRON PIN FOUND AT THE INTERSECTION OF GREEN STREET (A 60 FOOT RIGHT OF WAY) AND THE WESTERLY RIGHT OF WAY OF POND ROAD (AN 80 FOOT RIGHT OF WAY, SAID POINT ALSO BEING THE NORTHEAST CORNER OF LOT 1 OF SAID BLOCK, UNIT, AND SUBDIVISION; RUN THENCE SOUTH 18 DEGREES 39 MINUTES 04 SECONDS EAST ALONG THE RIGHT OF WAY OF POND ROAD A DISTANCE OF 62.55 FEET TO A POINT; RUN THENCE SOUTHEASTERLY ALONG SAID RIGHT OF WAY, AND FOLLOWING THE CURVATURE THEREOF AN ARC DISTANCE OF 108.49 FEET TO A POINT; RUN THENCE SOUTH 41 DEGREES 50 MINUTES 11 SECONDS EAST, ALONG SAID RIGHT OF WAY A DISTANCE OF 167.84 FEET TO A POINT; RUN THENCE SOUTH 49 DEGREES 02 MINUTES 22 SECONDS WEST A DISTANCE OF 15.79 FEET TO A POINT; RUN THENCE SOUTH 41 DEGREES 50 MINUTES 11 SECONDS EAST A DISTANCE OF 26.97 FEET TO AN IRON PIN SET, RUN THENCE SOUTH 79 DEGREES 32 MINUTES 31 SECONDS WEST ALONG THE LINE OF PROPERTY NOW OR FORMERLY BELONGING TO HOPKINS. A DISTANCE OF 270.78 FEET TO AN IRON PIN SET; RUN THENCE NORTH 21 DEGREES 41 MINUTES 16 SECONDS WEST A DISTANCE OF 76.39 FEET TO AN IRON PIN SET; RUN THENCE NORTH 19 DEGREES 23 MINUTES 31 SECONDS WEST A DISTANCE OF 46.77 FEET TO AN IRON PIN SET. RUN THENCE NORTH 65 DEGREES 48 MINUTES 45 SECONDS EAST A DISTANCE OF 22.67 FEET TO AN IRON PIN SET; RUN THENCE NORTH 17 DEGREES 14 MINUTES 31 SECONDS WEST ALONG THE LINE DIVIDING LOTS 1 AND 2 OF SAID BLOCK AND SUBDIVISION A DISTANCE OF 178.20 FEET TO AN IRON PIN FOUND ON THE SOUTHERLY RIGHT OF WAY OF GREEN STREET; RUN THENCE IN A NORTHEASTERLY DIRECTION ALONG THE RIGHT OF WAY OF GREEN STREET A DISTANCE OF 162.34 FEET TO THE IRON PIN FOUND AT THE POINT OF BEGINNING.

# EXHIBIT "2"
## NOTICE OF SALE    April 2010

NOTICE OF SALE UNDER POWER GEORGIA, GWINNETT COUNTY Under and by virtue of the Power of Sale contained in a Security Deed given by Fareeda Khader to Mortgage Electronic Registration Systems, Inc., dated February 29, 2008, recorded in Deed Book 48709, Page 0015, Gwinnett County, Georgia Records, as last transferred to SunTrust Mortgage, Inc. by assignment to be recorded in the Office of the Clerk of Superior Court of Gwinnett County, Georgia Records, conveying the after-described property to secure a Note in the original principal amount of THREE HUNDRED FOUR THOUSAND AND 0/100 DOLLARS ($304,000.00), with interest thereon as set forth therein, there will be sold at public outcry to the highest bidder for cash before the courthouse door of Gwinnett County, Georgia within the legal hours of sale on the **first Tuesday in April, 2010**, (April 6, 2010) the following property. The debt secured by said Security Deed has been and is hereby declared due because of, among other possible events of default, failure to pay the indebtedness as and when due and in the manner provided in the Note and Security Deed. The debt remaining in default, this sale will be made for the purpose of paying the same and all expenses of this sale, as provided in Security Deed and by law, including attorney s fees (notice of intent to collect attorney s fees having been

given). Said property will be sold subject to any outstanding ad valorem taxes (including taxes which are a lien, but not yet due and payable), any matters which might be disclosed by an accurate survey and inspection of the property, any assessments, liens, encumbrances, zoning ordinances, restrictions, covenants, and matters of record superior to the Security Deed first set out above. The entity that has full authority to negotiate, amend, and modify all terms of the mortgage with the debtor is: Suntrust Mortgage, Inc., 1001 Semmes Avenue, Richmond, VA 23224, 866-384-0903. Please understand that the secured creditor is not required by law to negotiate, amend, or modify the terms of the mortgage instrument. To the best knowledge and belief of the undersigned, the party in possession of the property is Fareeda Khader or a tenant or tenants and said property is more commonly known as 2153 Pond Rd, Duluth, Georgia 30096. The sale will be conducted subject (1) to confirmation that the sale is not prohibited under the U.S. Bankruptcy Code and (2) to final confirmation and audit of the status of the loan with the holder of the security deed. SunTrust Mortgage, Inc. as Attorney in Fact for Fareeda Khader McCalla Raymer, LLC 1544 Old Alabama Road Roswell, Georgia 30076 www.foreclosurehotline.net MR/cdh 4/6/10 Our file no. 5654910-FT2

# EXHIBIT "3"   QWR LETTER

February 25, 2013

SunTrust Mortgage, Inc.
1001 Semmes Avenue
Richmond, VA 23224

RE: Account # 0045532942
RE: Property address: 2153 Pond Rd., Duluth, GA 30096

Dear Customer Service,

This letter is a **"Qualified Written Request"** under Section 6 of the Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. § 2605 (e) and § 2609.  Section 2605, known as the "Servicer Act," requires servicers to respond to borrower requests for information and correction of account errors. The "Servicer Act" provisions give authority for a Qualified Written Request. The Servicer Act provisions in § 2605 are significant because borrowers are given **the right to sue for violations** based on the express private right of action found in § 2605(f).

I own the property at the address listed as 2153 Pond Rd., Duluth, GA 30096, and your bank services my mortgage.
Over the last several weeks there have been many stories documenting the problem that banks are foreclosing on homes without proof that they own the loan.  I have learned that in many cases, banks like yours do not even know who owns the loans you service.  Employees at several leading banks have admitted to rubber stamping tens of thousands of foreclosures every month, without even checking to make sure that the bank had a legal right to proceed with foreclosure.  In some cases,

banks allegedly falsified mortgage documents to cover up their mistakes. There have been reports of two banks trying to foreclose on the same home, banks foreclosing on homeowners who were current on their payments, and even of a bank foreclosing on a home where the homeowner had never taken out a mortgage to begin with. This is not merely a "technical problem"-- it is the difference between having a warm bed at night and being out on the street.

As a homeowner and a customer of your bank, I am horrified. I had always believed that if I played by the rules, I would be protected, but now I know that banks like yours think the rules don't apply to them.

To protect myself and my family, I need to know who owns my mortgage, who is my secured creditor. Within sixty (60) days, I would like to know the name, address, and phone number of the bank or investor that owns my mortgage. Furthermore, in light of the recent allegations of foreclosure fraud, I demand to see the original mortgage note proving ownership over my home loan. If you fail to produce a mortgage note proving that you have a right to collect my mortgage payments, I will be forced to consider all legal options available to me to ensure that my family and my home are protected.

This formal request is made on the above referenced account. Specifically, I am requesting the following information and I ask that I receive my response to these requests in writing.

1. A complete and itemized statement of the loan history from the date of the loan to the date of this letter including, but not limited to, all receipts by way of payment or otherwise and all charges to the loan in whatever form. This history should include the date of each and every debit and credit to any account related to this loan, the nature and purpose of each such debit and credit, and the name and address of the payee of any type of disbursement related to this account.

2. A complete and itemized statement of all advances or charges against this loan for any purpose that are not reflected on the loan history transaction statement provided in answer to question #1.

3. A complete and itemized statement of the escrow account of the loan, if any, from the date of the loan to the date of this letter, including, but not limited to, any receipts or disbursements with respect to real estate property taxes, fire or hazard insurance, flood insurance, mortgage insurance, credit insurance, or any other insurance product.

4. Have you purchased and charged to the account any Vendor's Single Interest Insurance?

5. A complete and itemized statement from the date of the loan to the date of this letter of any forced-placed insurance and expenses related thereto, related in any way to this loan.

6. A complete and itemized statement from the date of the loan to the date of this letter of any suspense account entries and/or any corporate advance entries related in any way to this loan.

7. A complete and itemized statement from the date of the loan to the date of this letter of any property inspection fees, property preservation fees, broker opinion fees, appraisal fees, bankruptcy monitoring fees, or other similar fees or expenses related in any way to this loan.

8. Identify the provision under the Security Deed and/or note that authorizes charging each and every such fee against the loan.

9. Please attach copies of all property inspection reports and appraisals.

10. A complete and itemized statement of any and all post-petition arrears including each month in which the default occurred, and the amount of each monthly default.

11. A complete and itemized statement of any late charges to this loan from the date of this loan to the date of this letter.

12. The amount, if applicable, of any "satisfaction fees."

13. A complete and itemized statement from the date of the loan to the date of this letter of any fees incurred to modify, extend, or amend the loan or to defer any payment due under the terms of the loan.

14. The current amount needed to pay-off the loan in full.

15. A full and complete comprehensible definitional dictionary of all transaction codes and other similar terms used in the statements requested above.

16. A complete and itemized statement of any funds deposited in any post-petition suspension account(s) or corporate advance account(s), including, but not limited to, the balance in any such account or accounts and the nature, source and date of any and all funds deposited in such account or accounts.

17. A complete and itemized statement from the date of this loan to the date of this letter of the amount, payment date, purpose and recipient of all foreclosure expenses, NSF check charges, legal fees, attorney fees, professional fees and other expenses and costs that have been charged against or assessed to this mortgage.

18. A complete and itemized statement of the amount, payment date, purpose and recipient of all fees for the preparation and filing of the original proof of claim, any amended proofs of claim, or any supplemental proofs of claim related to this mortgage.

19. The full name, address and phone number of the current holder of this debt including the name, address and phone number of any trustee or other fiduciary. This request is being made pursuant to Section 1641(f)(2) of the Truth In Lending Act, which requires the servicer to identify the holder of the debt.

20. The name, address and phone number of any master servicers, servicers, sub-servicers, contingency servicers, back-up servicers or special servicers for the underlying mortgage debt.

21. A copy of any mortgage Pooling and Servicing Agreement and all Disclosure Statements provided to any Investors with respect to any mortgage-backed security trust or other special purpose vehicle related to the said Agreement and any and all Amendments and Supplements thereto.

22. If a copy of the Pooling and Servicing Agreement has been filed with the SEC, provide a copy of SEC Form 8k and the Prospectus Supplement, SEC Form 424b5.

23. The name, address and phone number of any Trustee under any pooling or servicing agreement related to this loan.

24. A copy of the Prospectus offered to investors in the trust.

25. Copies of all servicing, master servicing, sub-servicing, contingency servicing, special servicing, or back-up servicing agreements with respect to this account.

26. All written loss-mitigation rules and work-out procedures related to any defaults regarding this loan and similar loans.

27. The procedural manual used with respect to the servicing or sub-servicing of this loan.

28. A summary of all fixed or standard legal fees approved for any form of legal services rendered in connection with this account.

29. Is this loan subject to any Electronic Tracking Agreement? If the answer is yes, then state the full name and address of the Electronic Agent and the full name and address of the Mortgage Electronic Registration System.

30. Is the servicing of this loan provided pursuant to any type of mortgage electronic registration system? If the answer is yes, then attach a copy of the mortgage electronic registration system procedures manual.

31. A copy of the LSAMS Transaction History Report for the mortgage loan account, with a detailed description of all fee codes.

32. Is this a MERS Designated Mortgage Loan? If the answer is yes, then identify the electronic agent and the type of mortgage electronic system used by the agent.

33. Is this mortgage part of a Mortgage Warehouse Loan? If so, then state the full name and address of the Lender and attach a copy of the Warehouse Loan Agreement.

34. Upon any default or notice of default, state whether or not the Mortgage Warehouse Lender has the right to override any servicers or sub-servicers and provide instructions directly to the Electronic Agent? If the answer is yes, then specifically identify the legal basis for such authority.

35. Is this mortgage part of a Whole Loan Sale Agreement? If the answer is yes, then state the name and address of the Purchaser, the Custodian, the Trustee, the Electronic Agent and any Servicer or Sub-Servicers.

**You should be advised that you must acknowledge receipt of this qualified written request within 20 business days, pursuant to 12 U.S.C. Section 2605(e)(1)(A) and Reg. X Section 3500.21(e)(1).**

You should also be advised that I will seek the recovery of damages, costs, and reasonable legal fees for each failure to comply with the questions and requests herein. I also reserve the right to seek statutory damages for each violation of any part of Section 2605 of Title 12 of the United States Code.

You are required by law to fully answer all these questions within 60 days from the date you receive this letter in addition to acknowledging receipt of my request in the first 20 days. During that time you are forbidden to report late-pays to the credit bureaus as well.

Thank you for your attention to this matter.

Sincerely,

Fareeda L. Khader
2153 Pond Rd.
Duluth, GA 30096

CC: Office of the Comptroller of the Currency
400 7th Street SW
Suite 3E-218
Washington, D.C. 20219

CC: Fannie Mae
3900 Wisconsin Avenue, NW
Washington, DC 20016-2892

*RESPA compliance is required by law for all servicers of loans*